IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KENNETH C.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  Civil Action No. 7:22-CV-00373 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| **Defendant.** | ) |

### MEMORANDUM OPINION

Plaintiff Kenneth C. ("Kenneth") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1381f. Kenneth alleges that the Administrative Law Judge ("ALJ") erred by failing to properly determine his mental and physical residual functional capacities ("RFC") and improperly assessing his subjective allegations. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **GRANT** the Commissioner's Motion for Summary Judgment (Dkt. 21) and **DENY** Kenneth's Motion for Summary Judgment (Dkt. 16).

### STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Kenneth failed to demonstrate that he was disabled under

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

1

the Act.² Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Kenneth filed for SSI and DIB benefits in January 2020, claiming that his disability began on August 1, 2017.³ The state agency denied Kenneth's claims at the initial and

---

² The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

³ Kenneth's last date insured was December 31, 2022; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive disability insurance benefits. R. 30; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

reconsideration levels of administrative review. R. 83–132. ALJ Thomas W. Erwin held a hearing on October 6, 2021, to consider Kenneth's claim for SSI and DIB, which included testimony from vocational expert Asheley Wells. R. 54–82. Kenneth was represented by counsel at the hearing. On October 20, 2021, the ALJ entered his decision considering Kenneth's claims under the familiar five-step process[4] and denying his claim for benefits. R. 26–53.

The ALJ found that Kenneth suffered from the severe impairments of residual effects of arm and leg fractures in motor vehicle accident, traumatic brain injury, obesity, tachycardia, sleep apnea, substance use disorder, and depression. R. 32. The ALJ found that Kenneth's carpal tunnel syndrome, cubital tunnel syndrome, headaches, and kidney stones were medically determinable impairments, but that they did not cause more than a minimal limitation in his ability to perform basic work activities and were non-severe. R. 32–33. The ALJ determined that Kenneth's severe impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 33–36.

The ALJ concluded that Kenneth retained the RFC to perform light work, except that he can occasionally operate foot controls and perform postural activities, including climbing, balancing, stooping, kneeling, crouching, and crawling; have occasional exposure to pulmonary irritants like fumes, odors, dusts, gases, and poorly ventilated areas; have no exposure to hazards

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

like hazardous machinery; and frequently perform reaching, handling, fingering, and feeling. R. 36–46. The ALJ also determined that Kenneth needs a job with no production rate or pace work, defined as having to keep up with an assembly line that is constantly moving, or any other type of job with strict daily or hourly quotas. Id.

The ALJ determined that Kenneth was unable to perform any past relevant work. R. 46. The ALJ also determined that Kenneth could perform other work that exists in the national economy such as night cleaner, price marker, and non-postal mail clerk. R. 47. Thus, the ALJ concluded that Kenneth was not disabled. R. 48. Kenneth appealed and the Appeals Council denied his request for review on May 10, 2022. R. 1–7.

## ANALYSIS

### I. Medical History Overview

#### a. Physical Health Treatment

On February 25, 2016, Kenneth was involved in a motor vehicle accident in which his car plummeted approximately 30–40 feet down an embankment. R. 786. Kenneth experienced a traumatic brain injury, femur fracture, bilateral radius and ulna fractures, amnesia, and facial fractures, and underwent two surgeries in the days following the accident to address his femur and forearm fractures. R. 818, 562. Kenneth participated in an in-patient rehabilitation program from March 2, 2016 until his discharge on March 17, 2016. R. 564.

Kenneth followed up with Trevor M. Owen, M.D. to address continued difficulty with range of motion in his left leg. R. 775. During the first follow-up on May 17, 2016, Dr. Owen noted that Kenneth had "failed to regain good range of motion" due to "heterotopic bone formation within his quadriceps muscles" of his left thigh. R. 778.

Kenneth underwent surgery of his left leg on June 13, 2016, that included arthroscopic

lysis of adhesions of the left knee joint, excision of heterotopic ossification from the deep left thigh, and manipulation of the left knee under anesthesia. R. 779–80. Following the surgical procedure, Kenneth presented to the emergency department at Roanoke Memorial Hospital on June 20, 2016, because of pain in the left thigh and a radiation burn. R. 772.

Kenneth followed up with a primary care physician for several months after the accident and surgical procedures. R. 399–406. During a visit to Buchanan Family Practice on August 9, 2016, Kenneth requested a referral to a pain management provider for treatment of chronic pain caused by facial, left femur, and bilateral forearm fractures. R. 406.

On September 9, 2016, Kenneth saw Murray E. Joiner, M.D., with a chief complaint of left lower extremity pain. R. 370. On examination of the neck, Dr. Joiner noted mild facet pain bilaterally with extension and decreased lumbar lordosis. R. 372. Dr. Joiner noted no evidence of neurological deficits in the upper or lower extremities. Id. Dr. Joiner diagnosed left lower extremity pain following motor vehicle accident, status post left femur fracture and repair, left knee pain, status post radial fracture and repair, whiplash injury, cervical facet arthropathy and facet-mediated pain from C2 through C7, intermittent neck pain and spasms, and motor vehicle accident with loss of consciousness. R. 373. He prescribed Norco and Cataflan, advised Kenneth to continue physical therapy, and indicated that he would consider cervical facet injections at future visits. Id. Dr. Joiner also informed Kenneth of "the disadvantages of bedrest and [of] the need to remain as active as possible." Id.

Kenneth saw Dr. Owen on October 19, 2016 to follow up on left knee pain that had persisted despite surgery in June 2016. R. 394. Dr. Owen noted that Kenneth had returned to work as an auto mechanic and experienced moderate pain by the end of the work day. R. 395. Dr. Owen performed a steroid injection of the left knee and advised Kenneth to continue range of

motion and strengthening exercises. R. 396.

Kenneth saw Taryn Wilson, a physician assistant in Dr. Joiner's practice, beginning in late 2016 through mid-2017 to address ongoing pain in the left femur and knee. R. 354–69. Ms. Wilson's findings were negative for any musculoskeletal or neurological deficits. Id. She renewed Kenneth's medications at each visit. Id.

During a visit with Dr. Robert J. Glenney, M.D. on August 30, 2017, for a complaint of nasal congestion, Kenneth shared that he could no longer afford ongoing pain management treatment and wanted to try medication that would help him taper from narcotics. R. 390. Dr. Glenney diagnosed Kenneth with chronic pain of the left knee and narcotic withdrawal. R. 391.

On October 26, 2019, Kenneth presented to the emergency department of Roanoke Memorial Hospital and stated that he had been hit on the right side of his head several times. R. 384. He complained of pain in the right temporal area and right jaw. Id. CT scans revealed no acute findings. R. 387–89. The final impression was an alleged assault, injury of head, right-sided abdominal pain, and tachycardia. R. 389.

A July 23, 2020, x-ray of the left knee showed loose bodies and small suprapatellar effusion, but fixation hardware was intact and there was no evidence of acute osseous abnormality. R. 543–44.

On November 19, 2020, Kenneth presented to Kathryn Hoyt, a physician assistant, complaining of bilateral forearm pain. R. 578. Findings on examination were notable for positive Tinel's sign bilaterally over the carpal tunnels, positive Phalen's sign, positive Durkan's sign over the wrists, strongly positive Tinel's sign bilaterally over the cubital tunnels, and positive elbow flexion tests. R. 579. Upon review of x-rays of the wrists and forearms, Kenneth received a medical assessment that included bilateral carpal tunnel syndrome and bilateral cubital tunnel

syndrome. R. 579.

b. Mental Health Treatment

Kenneth saw Jackie Zeltvay, a physician assistant, at Bradley Free Clinic for an initial visit on December 11, 2019. R. 484. Kenneth reported depression and chronic pain following the motor vehicle accident in 2016. Id. Kenneth was assessed as having moderate recurrent major depression, alcohol abuse, opioid dependence, and stimulant abuse. R. 485. Ms. Zeltvay prescribed sertraline (Zoloft). Id. Kenneth saw Dr. Nayan Bhatia the same day to establish psychiatric care. R. 486. Dr. Bhatia noted Kenneth presented with a fatigued appearance, sad and tearful affect, and nihilistic thoughts. R. 487. On January 15, 2020, Kenneth saw Ms. Zeltvay again, at which point she increased his Zoloft dosage and started him on Trazadone. R. 472. During their February 19, 2020, meeting, Kenneth informed Ms. Zeltvay that he had stopped taking Zoloft and Trazadone because those medications caused sleep disturbances. R. 465. Ms. Zeltvay noted that Kenneth remained on Suboxone therapy and that she had changed his medication to Wellbutrin. R. 466.

Kenneth began substance abuse group counseling with Embrace Healthy Solutions in late December 2019. R. 521. At a session in February 2020, Kenneth reported that he had been sober for five months. R. 517. Following Kenneth's release from prison on May 13, 2020,[5] he resumed counseling at Embrace Healthy Solutions. R 727. Kenneth was diagnosed with amphetamine-type substance use disorder and major depressive disorder. R. 735.

c. Medical Opinions

On August 21, 2020, state agency medical consultants Daniel Camden, M.D., and Alan Entin, PhD, reviewed the record and found that Kenneth could perform medium exertion work

---

[5] According to the Record, Kenneth was incarcerated for several months on a conviction related to amphetamine abuse. R. 527.

7

and did not identify any other physical limitations. R. 89–92. Dr. Entin identified Kenneth's fracture of the left lower extremity as severe, and Dr. Camden determined that Kenneth could perform medium exertional work and identified no other physical limitations. Id. On January 12, 2021, Bert Spetzler, M.D., reviewed the record and reached similar conclusions to those of Drs. Camden and Entin. R. 121, 129. The ALJ found these three opinions partially persuasive. R. 44. The ALJ reasoned that "the assessments are not entirely consistent with other evidence because the totality of the evidence supports more restrictive exertional and postural limitations, considering the claimant's continued reports of pain and physical limitations." Id. The ALJ further said that the "medical consultants did not have the benefit of reviewing all of the relevant evidence," and that "greater limitations are warranted in the areas identified based on the overall record." R. 45.

The ALJ also reviewed the consultative examination on August 20, 2021 conducted by Monika Lane, FNP. R. 45. Ms. Lane reviewed the record and determined that Kenneth could perform a range of medium work, with six hours of standing and eight hours of sitting, but only four hours of walking, in an eight-hour workday, and only occasional manipulative and postural activities. R. 549–50. The ALJ found that the opinion is "partially supported," but that "the opinion is not entirely consistent with other evidence, in that the claimant is reasonably limited to light work due to his continued reports of pain and physical limitations." R. 45. The ALJ further stated that "additional environmental limitations are warranted due to the claimant's [traumatic brain injury], tachycardia, and sleep apnea." Id. The ALJ found that the "totality of the evidence shows that the claimant can frequently perform reaching, handling, fingering, and feeling." Id.

In his August 21, 2020, review, Dr. Entin provided a mental assessment in which he found that Kenneth had a mild limitation in understanding, remembering, or applying

information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. R. 90, 103–04. In his January 12, 2021, assessment, Dr. Spetzler determined that Kenneth had a moderate limitation in the ability to carry out detailed instructions and in the ability to maintain attention and concentration for extended periods. R. 122. The ALJ found that these assessments were "persuasive in part," but that additional limitations were warranted because "the totality of the evidence supports different work-related limitations." R. 45. The ALJ reasoned that "the elimination of 'production rate or pace work' . . . more accurately addresses the claimant's 'moderate' difficulties in concentrating, persisting, or maintaining pace, considering his fatigued appearance and slowed thought processes in late 2019 and early 2020, although these findings later improved." Id. (internal citations omitted).

## II.   Physical Impairments and Substantial Evidence

Kenneth argues that the ALJ failed to make "specific findings regarding whether [Kenneth's] impairments would cause her [sic] to experience episodes of pain necessitating breaks or absences from work and how often these would occur and the impact on his ability to perform work related activities." Pl.'s Br. at 23, Dkt. 17. With respect to his lower extremities, Kenneth argues that the ALJ "failed to acknowledge that [Kenneth] tried to return to work as a mechanic and inspector but he was unable to keep up with the demands of working and had to stop working due to his pain and swelling in his feet." Id. The Commissioner responds that the ALJ "explicitly considered" Kenneth's subjective complaints and the objective medical evidence regarding his left lower extremity impairments. Def.'s Br. at 17. With respect to his upper extremities, Kenneth argues that the ALJ "failed to acknowledge Kathryn Hoyt, PA's findings on examination of positive Tinel's sign bilaterally over the carpal tunnels, positive Phalen's sign,

9

positive Durkan's sign over the wrists, strongly positive Tinel's sign bilaterally over the cubital tunnels, and positive elbow flexion tests." Pl.'s Br. at 24. Kenneth also claims that the ALJ did not consider Ms. Hoyt's findings with respect to Kenneth's "bilateral forearm pain, weakness, numbness and tingling." Id. In response, the Commissioner argues that "the ALJ thoroughly reviewed and considered the single November 2020 appointment with Ms. Hoyt." Def.'s Br. at 19.

The ALJ is required to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impartments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding

the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Here, the ALJ properly explained how the RFC accounts for Kenneth's physical impairments and provided the necessary medical and non-medical facts and evidence to support his conclusions. Addressing Kenneth's ability to work after the accident, the ALJ acknowledged that Kenneth "reported having moderate pain at the end of the workday" and that he had lost his job in June 2017 because "he 'couldn't keep up with the other guys' due to his leg injury." R. 39 (quoting R. 354). Contrary to Kenneth's allegation that the ALJ "failed to acknowledge" that Kenneth left his job after he returned "due to pain and swelling in his feet," the ALJ did not ignore this evidence. The ALJ does not have to address every piece of inconsistent evidence, Smith v. Colvin, No. 1:12cv1247, 2015 WL 3505201, at *7 (M.D.N.C. June 3, 2015); see also Brittani v. Sullivan, 956 F.2d 1162 (4th Cir. 1992); rather, the ALJ must author an opinion which shows how the evidence of record supports the decision made. Due to Kenneth's complaints, as well as consultative examinations in 2020, the ALJ found that Kenneth "is restricted to a range of light work with reduced postural demands." Id. The ALJ reasoned that his conclusions were supported by both the objective medical evidence and the extent to which the record reflected Kenneth's "asserted degree of medical severity and functional loss due to the left lower extremity problems." R. 39–40.

Despite Kenneth's assertions to the contrary, the ALJ's analysis of Kenneth's upper extremity impairments is supported by substantial evidence. As the Commissioner points out, the ALJ "discussed that [Kenneth] was evaluated for forearm pain . . . recounted Ms. Hoyt's examination, . . . [and] recited Ms. Hoyt's statement that the examination was indicative of neuropathic pain." Def.'s Br. at 19–20. Supported by a thorough discussion of the records from

11

Ms. Hoyt's examination, the ALJ found that Kenneth "has exertional and manipulative limitations as set forth above due to his ongoing upper extremity problems related to his prior injuries." R. 40. The ALJ reasoned that "the limited and conservative management of the upper extremity symptoms" do not warrant greater limitations. Id. The ALJ recounted the objective medical evidence from the time of the accident to the November 2020 examination by Ms. Hoyt, noting that Kenneth did not present with significant complaints about upper extremity impairment. R. 41. In fact, the ALJ noted that a consultative examination in August 2020, three months before the examination by Ms. Hoyt, Kenneth's upper extremity strength "was graded 5/5, and his sensation and reflexes appeared intact." Id.

      Attacking whether substantial evidence exists requires more than simply identifying medical records or statements that are inconsistent with the ALJ's findings. A claimant must show that the ALJ used an improper legal standard, did not consider a relevant portion of the record, did not satisfy the duty of explanation, or the overwhelming weight of inconsistent evidence overcomes the very low substantial evidence standard. The Fourth Circuit has been clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Hart v. Colvin, No. 5:169cv32, 2016 WL 8943299, at *3 (N.D.W. Va. Sept. 14, 2016) (quoting Walls v. Barnhart, 296 F. 3d 287, 290 (4th Cir. 2002)). Here, Kenneth has done no more than question the ALJ's conclusion.

      Contrary to Kenneth's contentions, the ALJ provided a detailed summary of Kenneth's physical impairments, medical records, testimony, and opinion evidence. The ALJ was required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Kenneth's alleged symptoms, and the medical opinions of record. This narrative discussion

allows this court to see how the evidence in the record—both medical and non-medical—supports the RFC determination. Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

### III. Mental Impairments under SSR 96-8P

Kenneth argues that the ALJ failed to properly assess his mental impairments as required by SSR 96-8P. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Specifically, Kenneth asserts that the ALJ failed to explain how his RFC findings account for Kenneth's moderate limitations in concentrating, persisting, or maintaining pace. Pl.'s Br. at 20.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe, 826 F.3d at 189 (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the

13

hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

Here, the ALJ explained why Kenneth's moderate limitations in concentration, persistence, or pace did not translate into a limitation in the RFC beyond that imposed. The ALJ specifically acknowledged that Kenneth was "slower at counting change and money than he used to be," but recognized that "most treatment notes describe [Kenneth] as alert and oriented, without any obvious distractibility, lethargy, or slow thinking, speech, or movements." R. 35. The ALJ also noted that Kenneth's "activities of daily living, such as doing light chores and other projects around the house, also demonstrate some capability in this area." Id. Contrary to Kenneth's argument, the ALJ explained his reasoning and the RFC, including specific references to the

14

medical records and opinions. The ALJ explained that Kenneth's moderate limitations were accommodated by "the work-related limitation that the claimant cannot perform production rate or pace work."[6] Id. (internal quotation omitted).

Kenneth's assertion that the ALJ did not explain how the RFC findings address or accommodate his moderate limitations with concentration, persistence, or pace is unfounded. The ALJ provided a lengthy narrative discussion of Kenneth's allegations, treatment records, and opinion evidence regarding his mental health limitations. The ALJ considered Kenneth's allegations of fatigued appearance and slowed thought processes, as well as difficulty in counting change and money in his opinion. The ALJ explained how the RFC is supported by Kenneth's mental health treatment records and carefully analyzed each facet of his mental health impairments. Accordingly, I find that the ALJ's assessment of Kenneth's impairments was sufficient under SSR 96-8P.

### IV.  Subjective Allegations

Kenneth argues that the ALJ's assessment of his allegations is not supported by substantial evidence. Pl.'s Br. at 26. Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing

---

[6] Kenneth argues that the ALJ failed to address his ability to sustain work over an eight-hour day. Pl.'s Br. at 19, Dkt. 17. The purpose of the RFC is to assess "an individual's ability to do sustained work-related physical and metal activities in a work setting on a regular and continuing basis" meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." See 20 C.F.R. §§ 404.1545(b); SSR 96-8, 1996 WL 374184, at *1-2. Here, the ALJ determined that Kenneth could perform sustained work activities in an ordinary work setting on a regular and continuing basis with certain limitations and accommodations. The ALJ provided a narrative discussion explaining his conclusions and the evidence supporting the RFC determination.

a condition that could reasonably produce the alleged symptoms, such as pain.[7] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

Here, the ALJ found that Kenneth's medically determinable impairments could reasonably be expected to cause the alleged symptoms. R. 38. However, the ALJ found that Kenneth's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. Id. The ALJ noted that Kenneth reported lower extremity pain at multiple appointments after the accident, but that "the asserted degree of medical severity and functional loss due to the left lower extremity is not entirely consistent with other evidence in the record." R. 39. The ALJ stated that Kenneth was able to return to full-time work in the auto industry for a year-long period after the accident and that treatment records "indicate that Kenneth's lower extremity symptoms have not limited his activities to the degree generally alleged since [he] stopped working, even though he stopped going to pain management in mid-2017." Id.

---

[7] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

With respect to his complaints of upper extremity impairments, the ALJ found that Kenneth's allegations were partially consistent with other evidence. R. 40. The ALJ further noted that greater limitations than those imposed were not warranted due to the "limited and conservative management of the upper extremity symptoms since the alleged onset date, and the overall objective medical evidence." Id. The ALJ reasoned that pain management notes after September 2016 "mainly focus on [Kenneth's] lower extremity symptoms" and that Kenneth presented with 5/5 grip strength on multiple evaluations. R. 40–41.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Kenneth's subjective complaints with substantial evidence, and that Kenneth is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

I **GRANT** summary judgment to the defendant, **DENY** Kenneth's motion for summary judgment, and **DISMISS** this case from the Court's docket.

Entered:  August 9, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge